UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:1:22cv23910

DARBRA JENKINS,

    Plaintiff,

v.

MIAMI DADE COUNTY,
JD PATTERSON, NORDIA WATSON,
DIAKI ALMON, ALVIN CUSHNIE,
JAMAL MCDOWELL, JERMAINE LAWSON,
ARSHAYLA LUMPKIN, TRUDY JACKSON,
JASON JUHMI, AND TOSCA COTTON

    Defendant(s).

_____/

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Plaintiff, DARBRA JENKINS ("Plaintiff" and/or "JENKINS"), by her counsel, sues Defendant, MIAMI-DADE COUNTY, a political subdivision of the State of Florida ("Miami-Dade"), JD PATTERSON as Director of Miami-Dade Corrections and Rehabilitation Department ("Patterson"), NORDIA WATSON ("Watson"), DIAKI ALMON ("Almon"), ALVIN CUSHNIE ("Cushnie"), JAMAL MCDOWELL ("McDowell"), JERMAINE LAWSON ("Lawson"), ARSHAYLA LUMPKIN ("Lumpkin"), JASON JUHMI ("Juhmi"), TOSCA COTTON ("Cotton"), AND TRUDY JACKSON ("Jackson") and pleads as follows:

**NATURE OF THE ACTION**

1.    This is an action under the Pregnancy Discrimination Act of 1978, as incorporated into Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k) to correct unlawful employment practices on the basis of sex, as well as, to provide appropriate relief to Plaintiff.

Specifically, Plaintiff alleges that Defendant engaged in unlawful acts which included, but were not limited to, discrimination and retaliation based upon the Plaintiff's sex, female, and a condition related to her sex (childbirth).

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.SC. § 2000e et.seq. and e-5(f)(1) and (3) ("Title VII"), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Pregnancy Discrimination Act of 1978 ("PDA"), as incorporated into Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e(k) and the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq*. (2014) ("FCRA"). In addition, this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## THE PARTIES

4. At all relevant times, Plaintiff was an adult female resident of Miami Dade County in the State of Florida and was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County.

5. Defendant, Miami-Dade County is a municipal corporation and governmental subdivision of the State of Florida, existing and organized under the laws of the State of Florida, and is liable for the acts and/or omissions of its employees and agents.

6. Defendant Patterson is the Director of Miami-Dade Department of Corrections and Rehabilitation ("MDCR") and, as such, is the Defendant, only in his official capacity as Director

of MDCR. Miami-Dade Department of Corrections and Rehabilitation ("MDCR") is a department of the County of Miami-Dade created pursuant to the laws of the State of Florida. MDCR is a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b). MDCR has continuously had at least 15 employees.

7. At all times relevant to this action, Defendant Lumpkin was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

8. At all times relevant to this action, Defendant Wastson was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

9. At all times relevant to this action, Defendant Almon was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

10. At all times relevant to this action, Defendant Cushnie was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under

color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

11. At all times relevant to this action, Defendant McDowell was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

12. At all times relevant to this action, Defendant Jackson was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

13. At all times relevant to this action, Defendant Lawson was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

14. At all times relevant to this action, Defendant Cotton was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

15. At all times relevant to this action, Defendant Juhmi was a correctional officer at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Officer Lumpkins was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

16. With respect to each of the individual defendants named in paragraphs 7 through 15, Plaintiff is suing the defendants in their individual capacities.

17. All conditions precedent to the institution of this action have been fulfilled. More than thirty (30) days prior to the institution of this lawsuit, Plaintiff filed a charge with the U.S. Equal Employment Opportunity commission (the "Commission") alleging violations of Title VII by Defendant. A notice of Right to Sue was issued by the Commission on or about September 1, 2022.

## STATEMENT OF CLAIMS

18. Beginning on or about January 1, 2021, and through approximately September 30, 2021, Defendant engaged in an unlawful employment practice at its Miami, Florida facility, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by discriminating against Plaintiff with respect to her compensation, terms, conditions, and privileges of employment on the basis of her sex, female (pregnancy), as more fully set forth below.

19. Plaintiff is a female and was an employee of Defendant within the meaning of 42 U.S.C. §2000(e) et. seq. and is member of a protected class.

20. On or about April 1, 2019, Plaintiff was hired by Miami-Dade County Corrections and Rehabilitation Department as a corrections officer at Metro West Detention Center.

21. On December 6, 2020, Plaintiff gave birth to her child.

22. Plaintiff returned from FMLA leave on March 4, 2021.

23. On or about March 4, 2021, Plaintiff notified Lt Juhmi, Lt. Cotton and Sergeants Watson, Juhmi, Lumpkin, Cushnie, and McDowell, that she was exclusively breast feeding. Specifically, Plaintiff communicated that she needed a twenty-minute pump break in the morning, and a twenty minute pump break in the afternoon to breastfeed her child.

24. Plaintiff also communicated her need for two pump breaks to breastfeed her child to Corporal Jackson.

25. Likewise, on the dates referenced in paragraphs thirteen (13) and fourteen (14), Plaintiff communicated that she was not taking her forty-five (45) lunch break.

26. On or about April 29, 2021, Lt. Lawson and Lt. Juhmi required Plaintiff to provide a doctor's note stating that she needed a pump to breastfeed.

27. On or about April 30, 2021, Plaintiff provided a doctor's note stating that she needed a pump to express milk in order to feed her child.

28. Upon advising Sergeant Watson and Corporal Jackson of her need to breastfeed, Plaintiff was subjected to adverse employment actions. Specifically, Lt. Juhmi, Sgt. Watson, Sgt Lumpkin failed/refused to accommodate Plaintiff's need to breastfeed.

29. Sergeant Watson failed to assign other officers to cover Plaintiff's shift during the times that Plaintiff needed to take breastfeeding breaks, thus precluding Plaintiff from being able to breastfeed.

30. Likewise, Sergeant Watson and Lt. Juhmi refused to allow Plaintiff to breastfeed in a sanitary location. Specifically, Plaintiff was told that if she was to breastfeed, she could only do so in the female locker room.

31. Because Lt. Juhmi and Sergant Watson failed/refused to allow Plaintiff to breastfeed at the required times and in a sanitary location, Plaintiff sent an email to Lieutenant Jason Juhmi letting him know that because of the actions of her supervisors, such as Sergeant Watson and other Sergeants, she was not being allowed to breastfeed.

32. Mr. Juhumi responded that he was aware of the situation and that "there are circumstances in a jail setting that may not allow this to take place at your own request such as staff responding to fights, medical emergency or any other critical incident that may take place." However, during the relevant time period there were no medical emergencies, fights, or backup calls during the time Plaintiff requested for breastfeeding.

33. On or about March 30, 2021, Plaintiff began experiencing health complications. Specifically, Plaintiff experienced blood pressure issues, depression, stress, and anxiety.

34. Plaintiff had to seek medical attention and counseling for the blood pressure issues, depression, stress, and anxiety.

35. The blood pressure issues, depression, stress, and anxiety also affected her body's ability to pump milk.

36. On or about April 30, 2021, Plaintiff filed a charge with the EEOC.

37. On or about April 30, 2021, Plaintiff was informed by her supervisors, Juhmi, McDowell, Cushnie, Almon, Lumpkin, Lawson, Cotton, Jackson, and Watson that she would need to take FMLA leave if she wanted to take two, twenty minute breastfeeding breaks per day.

38. Accordingly, Juhmi, McDowell, Cushnie, Almon, Lumpkin, Lawson, Cotton, Jackson, and Watson forced Plaintiff to apply for leave as that was the only option provided to her to safely and appropriately breastfeed her child.

39. On or about May 1, 2021, Plaintiff was placed on leave.

40. Again, on or about August 2, 2021, Plaintiff was again placed on leave as she was still not being allowed to take two, twenty-minute breastfeeding breaks per day.

41. On August 17, 2021, Plaintiff filed an inquiry with the EEOC.

42. Similarly, on or about August 24, 2021, Plaintiff was again placed on leave as she was still not being allowed to take two, twenty-minute breastfeeding breaks per day.

43. As a result of having to take leave, Plaintiff's lost all her seniority.

44. Specifically, Plaintiff was a "Step 2" employee when she was forced to take leave on May 5, 2021.

45. When Plaintiff returned to work on or about February 16, 2022, Plaintiff was made a "Step 1" employee.

46. At all relevant times, Plaintiff's job evaluations described as her a "satisfactory" employee.

47. Had Plaintiff not been forced to take leave, she would currently be no less than a "Step 3" employee.

48. Defendant subjected Plaintiff to the above mentioned discrimination because of her of her sex, female, as manifested by her pregnancy.

49. Plaintiff, because she was pregnant, was treated less favorably by Defendant than similarly situated individuals outside her protected class, non-pregnant female employees.

50. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee.

51. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

## COUNT I
## VIOLATION OF THE PDA AS AMENDED BY TITLE VII

52. Plaintiff realleges and incorporates herein all of the allegations set forth in paragraphs 1-51 above as if set forth herein.

53. On or about March 1, 2021, Plaintiff notified Sergeants Watson, Almon, Cushnie, McDowell, and Lumpkin, that she would need breastfeed breaks to feed her child.

54. Plaintiff was qualified to perform the essential functions of her job as evidenced by the fact that all of Defendant's job evaluations Plaintiff was always described Plaintiff as a "Satisfactory" employee.

55. On or about March 4, 2021, and repeatedly thereafter, Defendant denied Plaintiff the ability to breastfeed her child at the required times and in a sanitary location.

56. At all relevant times defendant knew that Plaintiff needed to breastfeed her child at the required times and in a sanitary location.

57. Defendant precluded Plaintiff from breastfeeding and forced her to take leave because of her sex, female, as manifested by her pregnancy.

58. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee, because of her sex, female, as manifested in her childbirth.

59. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

60. As a result of Defendants violation, Plaintiff suffered and continues to suffer from lost income, lost fringe benefits, expenses incurred in searching for replacement employment, and additional education, pain and suffering, mental anguish and emotional distress, and other damages permitted by law as more fully set forth in her prayer for relief.

**COUNT II**
**Retaliation Title VII of the Civil Rights Act of 1964, U.S.C. §§ 2000(e), et. Seq.)**

61. Plaintiff JENKINS realleges and incorporates by reference the allegations in paragraphs 1-51 above as if set forth herein.

62. Plaintiff JENKINS, at all times material hereto, undertook protected conduct when she filed her charge of discrimination with the EEOC on or about April 30, 2021.

63. As a direct and proximate result of the protected EEO activity, Plaintiff suffered material adverse employment actions, as a result of participating in protected EEO activity, as outlined in paragraphs 36 through 41, above. These actions would deter a reasonable employee from engaging in EEO activity.

64. A causal nexus exists between Plaintiff undertaking of the protected conducted complained of in paragraphs 36 and 41, above and the material adverse action taken by Defendants against her.

65. All conditions precedent to bringing this action have been performed or occurred as outlined in paragraph 17 above.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, DARBRA JENKINS, respectfully request that this Court:

A. Find Defendant's actions toward Plaintiff to be in violation of her rights under the PDA and Title VII;

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination against employees on the basis of sex, including pregnancy and/or childbirth;

C. Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for pregnant women and/or women who give birth, and which eradicate the effects of its past and present unlawful employment practices;

D.      Order Defendant to make Plaintiff whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, reinstatement or front pay in lieu thereof, and lost and/or reduced employee benefits;

E.      Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, medical expenses, job search expenses, and any other pecuniary losses, in amounts to be determined at trial;

F.      Order Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

G.      Order Defendant to pay Plaintiff punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

H.      Award Plaintiff her costs of this action, including reasonable attorneys' fees under 42 U.S.C.A. § 2000e-5; Fla. Stat. § 760.11 (2004); and 42 U.S.C.A. §§ 12203 and 12205; and pre-judgment interest, and;

I.      Grant such further relief as the Court deems necessary and proper in the public's interest.

## JURY TRIAL DEMAND

Pursuant to Federal Rule 38(b), trial by jury on all issues presented herein is respectfully demanded.

Dated: November 30, 2022

Respectfully submitted,

VICTOR A. RUIZ, P.A.
8660 W. Flagler Street
Suite 100
Miami, Florida 33144
Email: victor@ruiz.legal

By: __/s/ *Victor A. Ruiz*_____
**VICTOR A RUIZ, ESQ.**
Florida Bar No. 85353